UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ESTELA BLANCO, | ) | Case No. SA CV 15-1656-SP |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**I.**

**INTRODUCTION**

On October 15, 2015, plaintiff Estela Blanco filed a complaint against

defendant, the Commissioner of the Social Security Administration

("Commissioner"), seeking a review of a denial of a period of disability and

disability insurance benefits ("DIB").  Both plaintiff and defendant have consented

to proceed for all purposes before the assigned Magistrate Judge pursuant to 28

U.S.C. § 636(c).  The court deems the matter suitable for adjudication without oral

argument.

Plaintiff presents seven disputed issues for decision that can be categorized as follows:  (1) whether the application should be remanded given plaintiff's subsequent successful application for supplemental security income ("SSI"); (2) whether the Administrative Law Judge ("ALJ") properly considered the opinions of the treating and examining physicians; (3) whether the ALJ's residual functional capacity ("RFC") determination was supported by substantial evidence; (4) whether the ALJ posed a complete hypothetical to the vocational expert; and (5) whether the ALJ properly considered plaintiff's credibility.  Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 5-18; Defendant's Memorandum in Support of Answer ("D. Mem.") at 2-19.

Having carefully studied the parties' memoranda on the issues in dispute, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, there is new and material evidence to warrant remand. Further, the ALJ failed to properly consider the opinions of the treating and examining physicians, failed to properly assess plaintiff's credibility, and must reassess plaintiff's RFC.  The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated herein.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was forty-nine years old the alleged disability onset date, and has an eighth grade education.  AR at 78, 298.  Plaintiff has past relevant work as a mailing machine operator.[1]  *Id*. at 67.

---

[1]   The vocational expert found that, based upon plaintiff's testimony, she had past relevant work as a mailing machine operator.  AR at 67.  But the vocational expert also noted plaintiff's description of her past relevant work in her application was "very different" than her testimony.  *Id*. at 66.  Plaintiff reported that she programmed computer software to scan statements and operated the machines for

On July 20, 2009, plaintiff filed an application for a period of disability and DIB, alleging an onset date of July 27, 2008 due to back, right arm, and neck problems, as well as depression and anxiety. *Id*. at 87, 236-37. The Commissioner denied plaintiff's application initially. *Id*. at 87-90.

On October 20, 2011, plaintiff filed the instant application for a period of disability and DIB, again alleging an onset date of disability of July 27, 2008 due to depression, anxiety, and back, right arm, and neck problems. *Id*. at 78, 269, 298. The Commissioner denied plaintiff's application initially and upon reconsideration, after which she filed a request for a hearing. *Id*. at 91-102.

Plaintiff, represented by counsel and assisted by an interpreter, appeared and testified at a hearing before the ALJ on March 4, 2014. *Id*. at 43-74. The ALJ also heard testimony from Susan Allison, a vocational expert. *Id*. at 66-72. On March 14, 2014, the ALJ denied plaintiff's claim for benefits. *Id*. at 23-37.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff did not engage in substantial gainful activity from her alleged onset date of July 27, 2008 through December 30, 2013, the date last insured. *Id*. at 25.

At step two, the ALJ found plaintiff suffered from the following severe impairments: arthritis in the cervical spine and lumbar spine; and affective disorder. *Id*.

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* at 26.

The ALJ then assessed plaintiff's residual functional capacity,[2] and

flyer disbursement. *Id*. at 66, 299.

[2] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-

1  determined she had the RFC to perform medium work, but was limited to only

2  occasional interaction with the public. *Id.* at 27.

3       The ALJ found, at step four, that plaintiff could perform her past relevant

4  work as a mailing machine operator. *Id*. at 36. Consequently, the ALJ concluded

5  plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.*

6  at 37.

7       Plaintiff filed a timely request for review of the ALJ's decision, which was

8  denied by the Appeals Council on September 17, 2015. *Id.* at 1-3. The ALJ's

9  decision stands as the final decision of the Commissioner.

10       Subsequently, on October 13, 2015, plaintiff filed an application for

11  supplemental security income ("SSI"), alleging an onset of disability date of

12  January 1, 2009 due to an affective disorder and problems with the cervical and

13  lumbar spine. P. Mem., Ex. 1-2. On December 2, 2015, the Commissioner granted

14  plaintiff's claim for SSI benefits and found plaintiff eligible for SSI benefits as of

15  October 2015. P. Mem., Ex. 1.

16  ### III.

17  ### STANDARD OF REVIEW

18       This court is empowered to review decisions by the Commissioner to deny

19  benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security

20  Administration must be upheld if they are free of legal error and supported by

21  substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001)

22  (as amended). But if the court determines that the ALJ's findings are based on

23  legal error or are not supported by substantial evidence in the record, the court may

24  reject the findings and set aside the decision to deny benefits. *Aukland v.*

25  _____

26  56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation,
the ALJ must proceed to an intermediate step in which the ALJ assesses the

27  claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151

28  n.2 (9th Cir. 2007).

1  *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d

2  1144, 1147 (9th Cir. 2001).

3      "Substantial evidence is more than a mere scintilla, but less than a

4  preponderance." *Aukland*, 257 F.3d at 1035.  Substantial evidence is such

5  "relevant evidence which a reasonable person might accept as adequate to support

6  a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

7  F.3d at 459.  To determine whether substantial evidence supports the ALJ's

8  finding, the reviewing court must review the administrative record as a whole,

9  "weighing both the evidence that supports and the evidence that detracts from the

10  ALJ's conclusion." *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be

11  affirmed simply by isolating a specific quantum of supporting evidence.'"

12  *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

13  Cir. 1998)).  If the evidence can reasonably support either affirming or reversing

14  the ALJ's decision, the reviewing court "'may not substitute its judgment for that

15  of the ALJ.'"  *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.

16  1992)).

## IV.

## DISCUSSION

**A.    Remand is Warranted Due to New Evidence**

20      Plaintiff argues remand is warranted because the Social Security

21  Administration awarded her SSI benefits in a subsequent claim, which constitutes

22  new and material evidence.  P. Mem. at 5-7.

23      "Under 42 U.S.C. § 405(g), remand is warranted only if there is new

24  evidence that is material and good cause for the late submission of the evidence."

25  *Bruton v. Massanari*, 268 F.3d 824, 827 (9th Cir. 2001); *accord Booz v. Sec'y*, 734

26  F.2d 1378, 1380 (9th Cir. 1984).  Evidence is material if it bears directly and

27  substantially on the matter in dispute and there is a reasonable probability it would

28

1    have changed the outcome of the case.  *Booz*, 734 F.2d at 1380-81.  The evidence

2    must also be probative of the claimant's condition as it existed at the relevant time.

3    *Sanchez v. Sec'y*, 812 F.2d 509, 511 (9th Cir. 1987).

4            Two Ninth Circuit cases provide guidance as to when a case should be

5    remanded in order to reconcile a subsequent grant of disability benefits with a prior

6    decision denying benefits.  In *Bruton*, the plaintiff's initial disability application

7    was denied on April 9, 1996, but a subsequent application was granted on February

8    26, 1999, finding the plaintiff was disabled as of April 10, 1996.  268 F.2d at 826-

9    27.  The Ninth Circuit held that remand of the initial application was not warranted

10   because the "second application involved different medical evidence, a different

11   time period, and a different age classification."  *Id*. at 827.  In *Luna v. Astrue*, 623

12   F.3d 1032, 1033 (9th Cir. 2010), the plaintiff's initial application was denied

13   January 27, 2006.  While appeal of the first application was pending, the plaintiff

14   filed a second disability application, which was granted on August 20, 2007 and

15   found a disability onset date of January 28, 2006.  *Id.* at 1034.  The Ninth Circuit

16   held that remand for further factual consideration of the first decision was

17   warranted because the subsequent finding of disability "commenced at or near the

18   time [the plaintiff] was found not disabled based on the first application."  *Id.*  In

19   other words, the one day difference between the denial of the first application and

20   the disability onset date found in the second indicated the "'reasonable possibility'

21   that the subsequent grant of benefits was based on new evidence not considered by

22   the ALJ as part of the first application."  *Id*. at 1035.

23           As discussed above, here the ALJ denied plaintiff's claim for a period of

24   disability and DIB on March 14, 2014 and the Appeals Council denied her request

25   for review on September 17, 2015.  AR at 1-3, 23-37.  On October 13, 2015,

26   plaintiff filed an application for SSI benefits alleging an onset date of January 1,

27   2009 due to an affective disorder and problems with the cervical and lumbar spine.

28

1   P. Mem., Exs. 1-2.  The Social Security Administration granted the application on

2   December 2, 2005.  *Id*., Ex. 1.  The Social Security Administration determined that

3   based on plaintiff's RFC to perform light work, advanced age, limited education,

4   and inability to communicate in English, she was disabled pursuant to Rules

5   202.01 and 202.02 of the Medical Vocational Guidelines found at 20 C.F.R. part

6   404, Subpart P, Appendix 2 ("Grid").  *Id*., Ex. 2.  The ALJ's decision in the instant

7   case is not easily reconcilable with the subsequent award of SSI benefits.

8       First, the SSI application bears directly on the matter in dispute and, contrary

9   to defendant's contentions, did not involve entirely different medical evidence.  In

10   the SSI case, the State Agency physician, Dr. R. Dwyer, opined that plaintiff only

11   had the RFC to perform light work.  Some of the medical evidence Dr. Dwyer

12   reviewed – the February 17, 2014 examination conducted by Dr. James K. Styner

13   and a 2008 x-ray of the cervical spine – was submitted with the instant DIB

14   application.  *See* P. Mem., Ex. 2 at 4; AR at 427, 514-24.  As for the new 2015

15   medical records considered in the subsequent successful application, those records

16   addressed the same impairments at issue in the instant application.  As such, as

17   with *Luna*, the different decisions are not easily reconcilable.

18       Second, the subsequent application may have involved the same time period.

19   Contrary to defendant's argument, the Social Security Administration did not find

20   that plaintiff only became disabled as of October 13, 2015.  *See* D. Mem. at 4.

21   Instead, as is typical in SSI cases, the Social Security Administration found that

22   plaintiff was disabled *on* October 13, 2015, the date plaintiff filed his SSI

23   application.  P. Mem., Ex. 1 at 1; *see Lopez v. Astrue*, 2010 WL 1328888, at *14

24   (E.D. Cal. Apr. 2, 2010) ("[B]ecause SSI payments are made beginning with the

25   date of application, the onset date in an SSI case is ordinarily established as of the

26   date of filing, provided that the claimant was disabled on that date.") (citing Soc.

27   Sec. Ruling 83-20); *Cuadras v. Astrue*, 2011 WL 6936182, at *8 n.7 (E.D. Cal.

28

1   Dec. 30, 2011) ("Generally, in SSI cases, the claimant's onset date and application

2   date will be the same.").  Thus, the actual disability onset date determined by SSA

3   in granting SSI benefits is ambiguous.

4         Finally, defendant argues that even if the ALJ found plaintiff only had the

5   RFC to perform light work as the new evidence supports, there is no reasonable

6   probability that it would have changed the outcome of the instant application

7   because the two applications involved different age classifications.  *See* D. Mem. at

8   4-5.  Plaintiff was of advanced age when she applied for SSI benefits and was

9   disabled pursuant to Grid Rule 201.00(d).  In the instant application, plaintiff was

10  classified as a younger individual at the alleged onset date and as approaching

11  advanced age at the time of the decision.  *See* Grid Rules 201.00(g) and (h)(1).

12  Defendant contends that given plaintiff's other vocational factors, she would not

13  have been disabled under Grid Rules 202.11, 202.16, and 202.18 even if the ALJ

14  had determined plaintiff only had the RFC to perform light work.  Defendant is

15  partially correct.

16        While plaintiff was a younger individual, she would not have been disabled

17  under Grid Rules 202.16 and 202.18.  But plaintiff was classified as approaching

18  advanced age as of March 7, 2009.  Defendant contends plaintiff was not disabled

19  pursuant to Grid Rule 202.11.  But as defendant concedes, plaintiff was illiterate or

20  unable to communicate in English.  *See* D. Mem. at 5.  Thus, Grid Rule 202.11,

21  which involves individuals who are at least literate and able to communicate in

22  English, would be inapplicable.  Instead, pursuant to Grid Rule 202.09, an

23  individual who is closely approaching advanced age, illiterate or unable to

24  communicate, and has previously unskilled work experience is disabled.  And in

25  the event plaintiff's previous work was skilled or semiskilled as defendant

26

27

28

8

1    contends,[3] the Grid does not account for an individual closely approaching
2    advanced age, illiterate or unable to communicate in English who had previous
3    skilled or semiskilled work.  Therefore, contrary to defendant's contentions, even
4    taking into consideration the different age classifications, there is a reasonable
5    probability that the new evidence would have changed the outcome.

6         Thus, as in *Luna*, remand for further factual proceedings is appropriate.  The
7    new evidence is material and there is a reasonable probability it would have
8    changed the outcome of the instant application.

9    **B.    The ALJ's Physical RFC Determination Was Not Supported by**
10        **Substantial Evidence**

11        Plaintiff argues that the ALJ's determination that plaintiff had the RFC to
12   perform medium work was not supported by substantial evidence.  P. Mem. at 7-
13   13.  Specifically, plaintiff contends that the ALJ improperly rejected the opinions
14   of treating and examining physicians, and that the opinions of the State Agency
15   physicians alone did not constitute substantial evidence.  *Id.*

16        In determining whether a claimant has a medically determinable impairment,
17   among the evidence the ALJ considers is medical evidence.  20 C.F.R.
18   § 404.1527(b).  In evaluating medical opinions, the regulations distinguish among
19   three types of physicians:  (1) treating physicians; (2) examining physicians; and
20   (3) non-examining physicians.  20 C.F.R. § 404.1527(c), (e); *Lester v. Chater*, 81
21   F.3d 821, 830 (9th Cir. 1996) (as amended).  "Generally, a treating physician's
22   opinion carries more weight than an examining physician's, and an examining
23   physician's opinion carries more weight than a reviewing physician's."  *Holohan v.*
24   *Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c)(1)-(2).
25   The opinion of the treating physician is generally given the greatest weight because

26   _____

27        [3]  There was confusion as to the skill level of plaintiff's prior work, but the ALJ
28   appeared to determine it constituted unskilled work.  *See* AR at 67-68, 73.

9

the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* at 830. Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066-67 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

RFC is what one can "still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1)-(2). The ALJ reaches an RFC determination by reviewing and considering all of the relevant evidence, including non-severe impairments. *Id.*

### 1.   Treating Physicians

Dr. Zan Ian Lewis, an orthopedic surgeon, treated plaintiff on six occasions from November through December 2008 in connection with her worker's compensation claim. *See* AR at 377-412. During the examinations, Dr. Lewis observed plaintiff had mild tenderness and decreased range of motion in her neck and lower back, had slight paraspinal muscle spasm, had a weaker right hand, and walked with a normal gait. *See, e.g.,* AR at 400-01, 406-08. X-rays demonstrated slight to moderate anterior spurring at C5-6 and C6-7, anterior calcification in the region of the anterior longitudinal ligament at C5-6, and slight anterior spurring at

T12-L1, L2-3, L2-3, and L3-4. *Id*. at 409-10. Based on his examinations and plaintiff's subjective complaints, Dr. Lewis diagnosed plaintiff with neck and back pain of the strain/sprain variety, history of anxiety and depression, and history of sleep disorder associated with bodily pain and urinary incontinence. *Id*. at 379, 395. From a functional perspective, Dr. Lewis opined plaintiff could lift no more than ten pounds, could not engage in repetitive bending and stooping, and could not perform overhead work. *Id*. at 396.

Dr. Soheil M. Aval, an orthopedic surgeon, treated plaintiff from February 19, 2009 through October 8, 2009 in relation to her worker's compensation claim. *See id*. at 346-55, 443-47. Dr. Aval observed plaintiff had, among other things, tenderness to palpation over the bilateral upper trapezius, limited and painful range of motion in the cervical and lumbar spine, and muscle spasm. *See, e.g., id*. at 351-52. A June 26, 2009 EMG/NCV study of the upper extremities showed a slight degree of right median sensory neuropathy at or distal to the wrist line. *Id*. at 441. A September 23, 2009 MRI of the lumbosacral spine showed: a posterior disc bulge approximately 2-mm in size with corresponding indentation of the subarachnoid space and narrowing of the spina foramina with the left side greater than the right at L4-5; a posterior disc bulge approximately 3-mm in size with the right side more involved than the left with corresponding indentation mainly of the epidural fat and narrowing of the spina foramina with the right more than the left at L5-S1; and mild ninth of the spina foramina on the right at L3-4. *Id*. at 444. Based on the examinations, diagnostic studies, and subjective complaints, Dr. Aval diagnosed plaintiff with: cervicotraphezial chronic strain with myofascitis; right wrist median neuropathy; thoracic chronic strain with myofascitis; lumbar sprain/strain with probable radiculitis; degenerative disc disease in the lumbar spine with disc bulges 2-3 mm at L4-5 and L5-S1; psychological complaints; and gastritis. *Id*. Dr. Aval opined plaintiff was temporarily totally disabled. *Id*. at 445.

1

## 2. **Examining Physicians**

2   Dr. James K. Styner, an orthopedic surgeon, examined plaintiff on two

3 occasions, on October 13, 2008 and February 17, 2014.[4]  *Id*. at 421-30, 514-24.  At

4 the October 2008 examination, Dr. Styner observed plaintiff had a mildly

5 decreased range of motion and tenderness in her cervical spine, tenderness in

6 several areas, and decreased sensation on the right side of the body.  *Id*. at 425-27.

7 X-rays showed slight narrowing and anterior calcification at C5-6, anterior

8 marginal vertebral body spurring and slight narrowing at C6-C7, and osteophytosis

9 of the interior part of the C4.  *Id*. at 427.  Dr. Styner diagnosed plaintiff with

10 mechanical cervical spine pain, lateral epicondylitis of the right elbow,

11 inflammatory process of the right wrist, and depression.  *Id*. at 428.  Dr. Styner

12 opined that plaintiff was able to work.  *Id*.

13   At the February 2014 examination, Dr. Styner observed plaintiff had, among

14 other things, decreased range of motion in her cervical spine, tenderness on the

15 right paracervical spine musculature at C3 to C7 with spasm on the left side,

16 decreased sensation on the right side of the body, decreased range of motion in the

17 shoulders, tenderness anteriorly and of the AC joint, tenderness of the right lateral

18 epicondyle, tenderness of the right forearm, reverse Tinel's sign at the right wrist

19 to the elbow, and decreased range of motion in the thoracic and lumbar spine.  *Id*.

20 at 518-20.  Dr. Styner diagnosed plaintiff with chronic myoligamentous strain of

21 the cervical spine with degenerative disc disease, inflammatory process of the

22 shoulders bilaterally with stiff shoulder syndrome, lateral epiconylitis on the right,

23 inflammatory process of the right wrist, chronic myoligamentous strain of the

24 thoracolumbar spine, inflammatory process of the right knee and ankle, obesity,

25 depression, sleep dysfunction, and gastrointestinal upsetedness.  *Id*. at 522.  Dr.

26

---

27   [4]   Dr. Styner examined plaintiff on at least one other occasion after the date of

28 the decision.  *See* P. Mem., Ex. 2.

Styner opined plaintiff could sit for a total of two to three hours with the ability to get up and move around for fifteen to twenty minutes after every hour, stand for a total of two to three hours with the ability to get off her feet for fifteen to twenty minutes every thirty minutes, and lift or carry five pounds frequently and ten pounds occasionally. *Id*. at 524.

Dr. Joseph T. Culverwell, an orthopedic surgeon, examined plaintiff on November 30, 2009. *Id*. at 463-68. Dr. Culverwell observed plaintiff sat and stood comfortably, could rise without difficulty, ascended and descended the examination table with moderate difficulty, had full range of motion in the neck but with discomfort, vomited upon lateral flexion, and had poor effort on the right side as compared to the left in test of muscle strength of the upper extremities. *Id*. at 464-65, 467. Based on the examination, Dr. Culverwell diagnosed plaintiff with chronic lumbar pain syndrome and, by history, Dr. Culverwell diagnosed plaintiff with depression, breast cyst, renal stones, and lumbar disk disease. *Id*. at 467. Dr. Culverwell opined plaintiff could: lift twenty pounds occasionally and ten pounds frequently; stand, walk, or sit six hours out of an eight-hour workday; frequently push and pull in the upper and lower extremities; frequently climb, stoop, kneel, and crouch; and frequently reach in all directions. *Id*. at 467-68.

Dr. John S. Godes, an internist, examined plaintiff on February 24, 2012. *Id*. at 484-89. Dr. Godes observed plaintiff had decreased range of motion and tenderness in the cervical spine, tenderness of the thoracic spine, and tenderness and decreased range of motion in the lumbar spine. *Id*. at 486-87. Plaintiff could not perform the straight leg raising test due to low back pain. *Id*. at 487. Dr. Godes diagnosed plaintiff with cervicotrapezial chronic strain with myofascitis, thoracic chronic strain with myofascitis, lumbar strain/sprain with radiculitis, lumbar discogenic disease, right wrist median neuropathy, and gastritis. *Id*. at 488-89. Dr. Godes opined plaintiff could lift twenty pounds occasionally and ten

13

1  pounds frequently and stand or walk for six hours in an eight-hour workday.  *Id*. at
2  489.

3      **3.    State Agency Physicians**

4      Dr. L. Schwartz, an internist, reviewed plaintiff's medical records on
5  December 10, 2009 and opined plaintiff had the RFC to:  lift or carry twenty
6  pounds occasionally and ten pounds frequently; stand, walk or sit six hours in an
7  eight-hour workday; and frequently climb, balance, stoop, kneel, crouch, crawl,
8  and reach in all directions.  *Id*. at 469-73.

9      On April 19, 2012, Dr. J. Marks-Snelling reviewed plaintiff's medical
10  records and opined plaintiff had the RFC to:  lift or carry fifty pounds occasionally
11  and twenty-five pounds frequently; and stand, lift, or walk six hours in an eight-
12  hour workday.  *Id*. at 500-07.  Dr. Marks-Snelling specifically rejected Dr. Godes's
13  opinion as inconsistent with his diagnosis and true observations, and because Dr.
14  Godes's diagnosis was more acute rather than chronic in nature.  *Id*. at 506.  Dr. C.
15  Scott affirmed the determination that plaintiff could perform medium work.  *Id*. at
16  83.

17      **4.    The ALJ's Findings**

18      The ALJ determined that plaintiff had the RFC to perform medium work.
19  *Id*. at 27.  In reaching that determination, the ALJ gave great weight to Dr. Marks-
20  Snelling's and Dr. Scott's opinions on the basis that the cumulative objective
21  medical evidence supported their opinions.  *Id*. at 32.  The ALJ specifically noted
22  that plaintiff could get it in and out of a chair without difficulty, had a normal gait,
23  her joints had no deformity or edema, her ability to get on and off the examination
24  table was contradictory to her decreased range of motion on examination, and she
25  could shop, walk, go to the market, and do laundry.  *Id*.  The ALJ gave little weight
26  to the opinions of the other treating, examining, and State Agency physicians for
27  the reasons discussed below.  *Id.* at 32-34.

28

1    The ALJ's RFC determination was not supported by substantial evidence.
2    The "opinions of non-treating or non-examining physicians may [] serve as
3    substantial evidence when the opinions are consistent with independent clinical
4    findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957
5    (9th Cir. 2002).  But if the non-examining physician relies on the same clinical
6    findings as an examining or treating physician and simply reaches a different
7    conclusion, the opinion of the non-examining physician cannot constitute
8    substantial evidence.  Indeed, the same is true even for an examining physician
9    who relies on the same clinical findings as a treating physician but differs in his or
10   her conclusions.  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Murray*
11   *v. Heckler*, 722 F.2d 499, 501-02 (9th Cir. 1983)).  Here, Dr. Marks-Snelling and
12   Dr. Scott reviewed the same records and findings as the treating and examining
13   physicians but reached a different RFC determination.  Thus, their opinions, by
14   themselves, do not constitute substantial evidence.[5]

15       Moreover, in reaching his RFC determination, the ALJ also improperly
16   rejected the opinions of the treating and examining physicians without providing
17   specific and legitimate reasons for doing so.

18       First, the ALJ rejected the opinions of almost all the treating and examining
19   physicians on the basis that none of the rejected opinions were supported by their
20   own findings.  AR at 32-34; *see Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir.

---

22       [5]   Furthermore, Dr. Marks-Snelling specifically referred to a purportedly
23   inconsistent finding – Dr. Godes's determination that plaintiff had only 40 degrees
24   of forward flexion in her spine versus the greater flexion she exhibited in getting
     on and off the examination table (*see* AR at 487, 506) – but neglected to note that
25   Dr. Godes himself recorded no observations as to plaintiff's ability to get on and
26   off the table during his February 24, 2012 examination of her.  *See id*. at 484-89.  It
     was Dr. Culverwell who recorded such observations more than two years earlier,
27   on November 30, 2009, and even then he observed plaintiff had moderate difficulty
28   in getting on and off the table.  *Id*. at 464.

2004) (the lack of supporting medical findings is a specific and legitimate reason to discount an opinion). All of the physicians cited clinical and/or diagnostic findings in their treatment notes or opinions. Although the clinical findings and diagnostic results were mild, the findings were consistent, as were the opined limitations based on these findings. The ALJ may have disagreed with the opinions, but the opinions were not completely unsupported by clinical findings.

Second, although phrased differently in each instance, the ALJ rejected the opinions of Dr. Lewis, Dr. Culverwell, and Dr. Styner because they did not have a longitudinal treating relationship with plaintiff.[6] *Id*. at 32-33. Dr. Lewis had a short treating relationship, and Dr. Culverwell and Dr. Styner were examining physicians. Although the length of treatment is one factor to consider when weighing the opinions, it is not a reason, by itself, to reject an opinion. *See Orn*, 495 F.3d at 631 (length of treatment is one factor to consider when weighing the opinion of a treating physician). Indeed, it is a nonsensical reason as applied to an examining physician. An opinion based on an independent examination alone constitutes substantial evidence. *See Tonapetyan*, 242 F.3d at 1149. The ALJ also rejected Dr. Styner's opinion because there were no treatment notes after 2009. *Id*. at 34. Had Dr. Styner been a treating physician, this reason would be legitimate, but again, Dr. Styner was an examining physician, not a treating physician.

Third, the ALJ more specifically rejected Dr. Culverwell's opinion because he did not consider medical evidence subsequent to his examination.[7] AR at 33. By the ALJ's logic, the last opinion rendered should always carry the greatest

---

[6]   The ALJ incorrectly indicates that Dr. Styner only examined plaintiff once, on February 17, 2004. *See* AR at 34. In fact, Dr. Styner examined plaintiff on two occasions – October 13, 2008 and February 17, 2014. *Id*. at 421-30, 514-24.

[7]   The ALJ also cites the failure to review updated medical evidence as a basis for rejecting Dr. Schwartz's opinion. AR at 33.

1  weight because that physician will have the most medical records to review, which,

2  by itself, is not a specific and legitimate reason for rejecting opinions.  It is also

3  internally inconsistent with the ALJ's own decision, which relied on the 2012

4  opinions of Drs. Marks-Snelling and Scott, which could not have considered Dr.

5  Styner's February 2014 findings.  Moreover, the clinical findings made by other

6  physicians subsequent to Dr. Culverwell's opinion were similar to his own.  Thus,

7  Dr. Culverwell's opinion likely would have been the same had he considered

8  medical evidence obtained after his opinion.

9      Fourth, the ALJ rejected the opinions of Dr. Aval and Dr. Styner because

10  they were given in connection with plaintiff's worker's compensation claim and

11  therefore were less credible.  AR at 33-34.  An ALJ may not reject an opinion

12  solely on the basis that the source was a physician hired by claimant for a worker's

13  compensation claim.  *See Nguyen v. Chater*, 100 F.3d 1462, 1464-65 (9th Cir.

14  1996) (noting that the source of a report is a factor that justifies rejection only if

15  there is evidence of actual impropriety or no medical basis for that opinion).  In

16  other words, an ALJ may not presume bias.  *See Lester*, 81 F.3d at 832.  The ALJ

17  cites no evidence of bias.

18      Separately but related, the ALJ also disregarded as irrelevant Dr. Aval's

19  opinion that plaintiff was "temporarily totally disabled" because the term is

20  inapplicable in social security settings.[8]  *Id*. at 33.  The ALJ correctly noted that

21  temporary total disability is a term used in worker's compensation cases and does

22  not apply in the social security disability context.  *See Booth v. Barnhart*, 181 F.

23  Supp. 2d 1099, 1104 (C.D. Cal. 2002).  As such, it was a specific and legitimate

24  reason for rejecting Dr. Aval's opinion that plaintiff was "temporarily totally

25  disabled."

26      In sum, the ALJ's determination that plaintiff had the RFC to perform

27  _____

28  [8]  Dr. Aval did not opine any functional limitations.

17

medium work was not supported by substantial evidence. The ALJ properly rejected Dr. Aval's opinion that plaintiff was temporarily totally disabled in the worker's compensation context, but failed to cite specific and legitimate reasons supported by substantial evidence for rejecting the opined limitations rendered by the treating and examining physicians. Instead, the ALJ's determination was based solely on the opinions of two non-examining physicians, whose opinions, by themselves, did not constitute substantial evidence.

## C.   The ALJ's Mental RFC Determination Was Not Supported By Substantial Evidence

Plaintiff contends the ALJ's RFC determination regarding her mental limitations was not supported by substantial evidence. P. Mem. at 14-16. Specifically, plaintiff argues that the RFC determination does not adequately address all of her mental impairments, although plaintiff fails to specify what additional limitations she believes the evidence supports. *See id*. at 14-15. Based on her argument, it appears plaintiff believes the ALJ should have included limitations regarding concentration and simple and repetitive tasks. *See id.*

### 1.   Medical History

Dr. Sophia M. Hyzin, a treating psychologist, treated plaintiff from July 2008 through at least August 2009.[9] AR at 438. Although Dr. Hyzin completed a Mental Disorder Questionnaire Form on August 6, 2009, her treatment notes are not a part of the record. *See id*. at 434-38. In her opinion, Dr. Hyzin stated that plaintiff was pleasant, cooperative, tearful, and had psychomotor retardation. *Id*. at 435. Dr. Hyzin further reported plaintiff had mildly impaired memory, moderately to severely impaired concentration, organized thought content, and presented with symptoms of anxiety and depression. *Id*. at 435-36. From a functional standpoint,

---

[9]   Psychologists are considered acceptable medical sources whose opinions are accorded the same weight as physicians. 20 C.F.R. § 404.1513(a)(2).

1   Dr. Hyzin opined plaintiff could perform activities of daily living, but would be
2   unable to complete the activities without laying down every so often, and
3   frequently forgot to finish what she started.  *Id.* at 436.  Dr. Hyzin also opined that
4   plaintiff found dealing with people draining and difficult, was unable to sustain
5   focus, was unable to follow all instructions, was unable to adapt to work stresses,
6   and was unable to maintain attendance and schedules.  *Id.* at 437.

7       Dr. David Brendel, a psychologist, examined plaintiff on January 7, 2009 in
8   connection with plaintiff's worker's compensation claim.  *Id.* at 356-75.  Dr.
9   Brendel observed that plaintiff, among other things, had a sad, flat, and pained
10  affect; was anxious and alternated between sitting and standing; had a depressed
11  and worried mood; was oriented to person, place, time, and situation; had poor
12  long-term memory and partially intact short-term memory; had poor attention span
13  and concentration; had good insight; and was able to respond in a timely fashion.[10]
14  AR at 364-65.  Dr. Brendel administered eight psychological tests which showed
15  that plaintiff, among other things:  had a tendency to develop physical problems
16  when under stress; had difficulty managing routine affairs; and scored in the
17  moderate range of depression and anxiety.  *Id.* at 365-73.  Based on plaintiff's
18  history, mental status examination, and test results, Dr. Brendel diagnosed plaintiff
19  with depressive disorder, anxiety disorder, and personality disorder, and concluded
20  her physical work injury and harassment caused emotional distress.  *Id.* at 373-74.
21  Dr. Brendel opined plaintiff was totally and temporarily disabled due to work-
22  related psychological stress and strain secondary to work-related physical injuries,
23  but did not specify any functional limitations.  *Id.* at 374.

24      Dr. Lorna Carlin, a psychiatrist, examined plaintiff on February 24, 2012.
25  *Id.* at 476-82.  During the mental status examination, plaintiff was tearful at times,

26

27      [10]  Dr. Brendel attributed plaintiff's alternating between sitting and standing as
28  consequent to pain.  AR at 360.

was cooperative, was coherent, had a depressed mood, and was alert. *Id*. at 479-80.  Dr. Carlin observed that although plaintiff was cooperative, appeared truthful, and exhibited no evidence of exaggeration, she did not appear to put full effort into the examination. *Id*. at 479, 481.  Dr. Carlin diagnosed plaintiff with major depressive disorder and psychological stressors. *Id*. at 481.  Dr. Carlin opined plaintiff was:  able to understand, remember, and carry out simple one- or two-step instructions; able to do detailed and complex commands; moderately limited in her ability to relate and interact with coworkers and the public; moderately limited in her ability to maintain concentration, attention, persistence, and pace; and moderately limited in her ability to maintain regular attendance in the work place and perform work activities on a consistent basis. *Id*. at 482.

Dr. P.M. Balson, a state agency psychiatrist, opined plaintiff had mild limitations with activities of daily living. *Id*. at 456.  Dr. Balson opined plaintiff had moderate limitations:  with maintaining concentration, persistence, or pace; in her ability to understand, remember, and carry out detailed instructions; in her ability to accept instructions and respond appropriately to criticism from supervisors; and in her ability to set realistic goals or make plans independently of others. *Id*. at 456, 459-60.  Dr. Balson opined plaintiff would be unable to perform her past relevant work but would be mentally capable of sustained simple, repetitive tasks within a different worksite. *Id*. at 461.

Dr. Howard Atkins, a state agency psychologist, opined plaintiff had an affective disorder, was markedly limited in her ability to interact appropriately with the general public, could relate to supervisors and peers on a superficial work basis, and could adapt to a work situation. *Id*. at 492-95.  Dr. Atkins further opined plaintiff had mild limitations with activities of daily living, moderate limitations in maintaining social functioning, and mild limitations in maintaining concentration, persistence, or pace. *Id*. at 497.

1

## 2. <u>The ALJ's Findings</u>

2      The ALJ determined plaintiff had one mental limitation – she should be

3 limited to occasional interaction with the public. *Id*. at 27.  In reaching that

4 determination, the ALJ gave Dr. Atkins's opinion great weight on the basis it was

5 consistent with the objective evidence and "based on a review of the most updated

6 evidence." *Id*. at 35.  The ALJ gave "partial weight" to Dr. Carlin's opinion,"

7 lesser weight to Dr. Balson's opinion, no weight to Dr. Brendel's opinion,[11] and

8 little weight to Dr. Hyzin's opinion.  *Id*. at 35-36.

9      Similar to his physical RFC determination, the only evidence supporting

10 ALJ's mental RFC determination was the opinion of a non-examining physician,

11 Dr. Atkins.  Although the ALJ also purports to give Dr. Carlin's opinion "partial

12 weight," he appears to give weight only to Dr. Carlin's finding that plaintiff did not

13 appear to put in full effort during the examination and was moderately limited in

14 her ability to interact with the public.  *See id*. at 35.  As discussed above, Dr.

15 Atkins's opinion may constitute substantial evidence only if it is consistent with

16 independent clinical findings or other evidence. *Thomas*, 278 F.3d at 957.  Here,

17 Dr. Atkins's omission of a concentration limitation was not consistent with either.

18      Based on their examinations of plaintiff, Dr. Hyzin and Dr. Carlin opined

19 plaintiff had moderate limitations in her ability to maintain concentration,

20 persistence, or pace.  AR at 437, 482.  Dr. Brendel did not opine any specific

21 functional limitations but also observed that plaintiff had a poor attention span and

22 concentration.[12]  *Id*. at 365.  The ALJ could not reject these opinions without

23

24 ─────────────

25 [11]   The ALJ did not specifically state what weight he gave Dr. Brendel's
opinion but the court may infer no weight from the ALJ's decision. *See* AR at 35.

26

27 [12]   Although Dr. Balson also opined plaintiff had moderate limitations in her
ability to maintain concentration, like Dr. Atkin, his opinion is not based on his

28 own clinical findings.  AR at 459

1   providing specific and legitimate reasons.

2   　　　The ALJ gave little weight to Dr. Hyzin's opinion because there were no

3   treatment notes to support the opinion and she stopped treating plaintiff in August

4   2009. *Id.* at 36. The fact that a treating relationship ended is not a sufficient

5   reason to discount an opinion. To the extent that the ALJ is arguing plaintiff's

6   condition changed since her last treatment date, there is no evidence to support that

7   finding. As for the lack of treatment notes, the ALJ correctly notes that he does not

8   need to accept an opinion that is unsupported by clinical findings; however, in this

9   case the opinion was not brief and conclusory. *See Tonapetyan*, 242 F.3d at 1149

10   (an ALJ does not need to accept opinions that are conclusory, brief, and

11   unsupported by clinical findings). Dr. Hyzin provided detailed responses to the

12   questions. Thus, although the lack of treatment notes is a legitimate reason to

13   discount Dr. Hyzin's opinion, the ALJ's decision to give it little weight as opposed

14   to partial or less weight is not supported by substantial evidence. On remand, the

15   ALJ should further develop the record.

16   　　　The ALJ gave only "partial weight" to Dr. Carlin's opinion on the basis that

17   her opinion was not an accurate assessment "based on her observations" of

18   plaintiff. AR at 35. Specifically, the ALJ relied on Dr. Carlin's observation that

19   plaintiff was not putting forth full effort and did not want to complete certain tasks

20   as reasons to discount Dr. Carlin's opinion. *Id.*; *see id.* at 479-81. An ALJ may

21   reasonably question a physician's opinion if a claimant exerted a lack of effort

22   during the examination. *See Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir.

23   1999) (treating or examining physician's opinion based on the claimant's own

24   complaints may be disregarded if the claimant's complaints have been properly

25   discounted); *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (ALJ may

26   legitimately accord less weight to, or reject, the opinion of a physician based on the

27   self-reporting of an unreliable claimant where that claimant's complaints have been

28

1   properly discounted).  But Dr. Carlin stated that there was no evidence of

2   exaggeration or manipulation, and noted there may have been an underlying

3   disorder causing plaintiff to put in less effort.  AR at 479, 481.  Given that

4   assessment, it appears that plaintiff's lack of effort was not due to malingering but

5   rather a further psychological issue.  As such, it was not a legitimate reason to

6   discount Dr. Carlin's opinion.

7          Finally, the ALJ rejected the opinions of Dr. Brendel because the definition

8   of disability differs in worker's compensation and social security disability claims.

9   *Id*. at 35.  Although an ALJ may reject a physician's ultimate disability assessment

10  if it was based on worker's compensation grounds, an ALJ may not reject the

11  objective medical findings.  *See Booth*, 181 F. Supp. 2d at 1104-05 (citing *Coria v.*

12  *Heckler*, 750 F.2d 245, 247 (3d Cir. 1984)).  Thus, the ALJ may reject Dr.

13  Brendel's opinion that plaintiff was totally and temporarily disabled due to work-

14  related psychological stress, but may not reject his finding that plaintiff had poor

15  concentration simply because it was provided in the context of a worker's

16  compensation claim.

17         For these reasons, the ALJ's mental RFC determination was not supported

18  by substantial evidence.

19  **D.    The ALJ Failed to Ask a Proper Hypothetical**

20         The ALJ is not required to obtain testimony for a vocational expert at step

21  four, but the ALJ did so here.  *See Matthews v. Shalala*, 10 F.3d 678, 681 (9th

22  Cir.1993) (vocational expert's testimony is useful at step four, but not required).

23  Plaintiff argues the ALJ failed to ask a proper hypothetical.  P. Mem. at 11; *See*

24  *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) ("If a vocational expert's

25  hypothetical does not reflect all the claimant's limitations, then

26  the expert's testimony has no evidentiary value to support a finding that the

27  claimant can perform jobs in the national economy.") (quoting *Matthews v.*

28

*Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (internal quotation marks and citation omitted)); *Edlund v. Massanari*, 253 F.3d 1152, 1160 (9th Cir. 2001) (same and citing additional authority).  Specifically, plaintiff argues the ALJ failed to incorporate all of plaintiff's limitations in the hypothetical.  P. Mem. at 11.

The ALJ posed two hypotheticals to the vocational expert: (1) a hypothetical person limited to medium work; and (2) a hypothetical person with the RFC to do light work but limited to simple, routine tasks and only occasional interaction with the public and co-workers. AR at 70-72.  Neither hypothetical incorporated the RFC and limitations determined by the ALJ – namely, a person limited to medium work and only occasional interaction with the public.  *See id*. at 27.  Therefore, the hypothetical was incomplete.  Further, as discussed above, the ALJ's RFC determination was not supported by substantial evidence in any event.  Therefore, the ALJ must reconsider the evidence and reassess the RFC, and if he relies on vocational expert testimony given in response to a hypothetical, the hypothetical must fully reflect all of plaintiff's determined limitations.

**E.    The ALJ Failed to Properly Assess Plaintiff's Credibility**

Plaintiff contends the ALJ failed to properly consider her credibility.  P. Mem. at 16-18.  Specifically, plaintiff argues none of the ALJ's reasons for discounting her credibility were clear and convincing and supported by substantial evidence.  *Id.*

An ALJ must make specific credibility findings, supported by the record. Social Security Ruling 96-7p.  To determine whether testimony concerning symptoms is credible, an ALJ engages in a two-step analysis.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  First, an ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344

1    (9th Cir. 1991) (en banc)).  Second, if there is no evidence of malingering, an "ALJ

2    can reject the claimant's testimony about the severity of her symptoms only by

3    offering specific, clear and convincing reasons for doing so."  *Smolen*, 80 F.3d at

4    1281 (citation omitted); *accord Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir.

5    2014).

6          An ALJ may consider several factors in weighing a claimant's credibility,

7    including: (1) ordinary techniques of credibility evaluation such as a claimant's

8    reputation for lying; (2) the failure to seek treatment or follow a prescribed course

9    of treatment; and (3) a claimant's daily activities.  *Tommasetti v. Astrue*, 533 F.3d

10   1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.  The lack of objective

11   medical evidence to support allegations of limitations is also a factor that may be

12   considered when evaluating credibility, but it may not be the only factor

13   considered.  *See Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001) (lack

14   of corroborative objective medical evidence may be one factor in evaluating

15   credibility); *Bunnell*, 947 F.2d at 345 (an ALJ "may not reject a claimant's

16   subjective complaints based solely on a lack of objective medical evidence to fully

17   corroborate the alleged severity of pain").

18         At the first step, the ALJ here found plaintiff's medically determinable

19   impairments could reasonably be expected to cause the symptoms alleged.  AR at

20   28.  At the second step, because the ALJ did not find any evidence of malingering,

21   the ALJ was required to provide clear and convincing reasons for discounting

22   plaintiff's credibility.  The ALJ provided five reasons for discounting plaintiff's

23   credibility:  (1) the severity of her alleged symptoms was not supported by the

24   objective medical evidence, including a lack of diagnostic studies; (2) she received

25   conservative treatment; (3) plaintiff continued to work for three months after her

26   injury; (4) plaintiff did not seek treatment; and (5) her alleged symptoms were

27   inconsistent with her activities of daily living.  *Id*. at 28, 31-32.

28

1    The first reason cited by the ALJ for finding plaintiff less credible was that

2    her allegations were inconsistent with the objective medical evidence. *Id*. at 28,

3    31; *see Rollins*, 261 F.3d at 856-57. The ALJ further found there were minimal

4    findings to support her allegations of "incredible pain." AR at 31. X-rays "did not

5    reveal significant abnormalities" in her cervical and lumbar spine, there was no

6    evidence of a nerve root compression in the lumbar spine, and there was only a

7    slight degree of right median sensory neuropathy at or distal to the wrist line. *Id*.

8    And the ALJ also noted that although plaintiff was hit on the back of the

9    head and right hand by machine parts in 2008, she alleged pain in her lower back

10   and only started alleging pain on the entire right side of her body after 2009. *Id.* at

11   28, 31.

12   The record shows plaintiff complained of constant or intermittent pain since

13   the injury. *See, e.g., id*. 350, 399-400, 485, 515. Although plaintiff focused on the

14   pain in her cervical spine, lumbar spine, and right wrist, plaintiff also complained

15   of pain and/or numbness to the right side of her body from the onset. *See id*. at

16   399, 424. No physician opined that the workplace accident could not have caused

17   the pain in plaintiff's back and right side. Indeed, Dr. Lewis opined that it was

18   medically probable that plaintiff's back pain developed as a consequence of her

19   workplace injury. *Id.* at 395.

20   Further, the clinical findings and diagnostic tests supported plaintiff's

21   complaints. The clinical findings consistently showed that plaintiff had tenderness

22   and decreased range of motion in her neck and back. *See, e.g., id*. at 352, 400-01,

23   518-20. Diagnostic tests showed degenerative changes in plaintiff's lumbar spine,

24   anterior spurring and calcification in the cervical spine, and slight degree of

25   neuropathy at or distal to the right wrist. *See id*. at 409-10, 444. Although the

26   findings did not appear severe, they were consistent with plaintiff's complaints of

27

28

1   pain.[13]  Thus, there was objective evidence to support plaintiff's allegations.

2          The second reason cited by the ALJ for discounting plaintiff's credibility –

3   she received conservative treatment – was clear and convincing.  *Id.* at 31; *see*

4   *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of conservative

5   treatment is sufficient to discount a claimant's testimony regarding severity of an

6   impairment.") (internal quotation marks and citation omitted).  Plaintiff was treated

7   with anti-inflammatory medication, muscle relaxants, and over the counter pain

8   medication, all of which are considered conservative.  *See, e.g.*, AR at 402, 442,

9   517; *see also Tommasetti*, 533 F.3d at 1040 (describing anti-inflammatory

10  medication as conservative treatment).

11         The ALJ's third reason for finding plaintiff less credible is that plaintiff

12  continued to work for three months after the accident.  AR at 32.  An ALJ is

13  required to consider a claimant's work history when assessing credibility.  *See* 20

14  C.F.R. § 404.1529(c)(3).  Plaintiff testified that after the injury she attempted to

15  return to work but she was continuously removed from her position due to pain and

16  ultimately left the job.  *Id*. at 52.  The fact that a claimant tried to work and failed

17  because of her impairments is not a clear and convincing reason to discount his

18  credibility.  *See Lingenfelter*, 504 F.3d at 1038 .

19         The ALJ cites a fourth reason in discounting plaintiff's credibility –

20  plaintiff's lack of treatment.  AR at 32.  The ALJ notes that other than some old

21  treatment records from plaintiff's worker's compensation claim, plaintiff did not

22  seek treatment for her symptoms.  *Id.*  The failure to seek treatment may be a basis

23  for an adverse credibility finding unless there was a good reason for not doing so.

24  *See Orn*, 495 F.3d at 638.  Plaintiff claims that she did not seek treatment because

25

26  _____

27  [13]   Despite Dr. Lewis's opinion that the objective findings were consistent with
    a lesser degree of subjective complaints, his opined functional limitations were the

28  most restrictive of all provided.  *See* AR at 402.

1  she lacked the financial means.  The inability to afford treatment cannot be used

2  against a plaintiff.  *See id.*

3  Finally, the ALJ found plaintiff less credible because her activities of daily

4  living were inconsistent with her claimed degree of impairment.  AR at 32; *see*

5  *Thomas*, 278 F.3d at 958-59 (in making a credibility determination, an ALJ may

6  consider inconsistencies between a claimant's testimony and conduct).

7  Specifically, the ALJ noted plaintiff was able to perform independent personal

8  care, go to the market, do laundry, prepare her own meals, drive, go out alone, and

9  perform household chores.  AR at 32.

10  Inconsistency between a claimant's alleged symptoms and her daily

11  activities may be a clear and convincing reason to find a claimant less credible.

12  *Tommasetti*, 533 F.3d at 1039 ; *Bunnell*, 947 F.2d at 346-47.  But "the mere fact a

13  [claimant] has carried on certain daily activities, such as grocery shopping, driving

14  a car, or limited walking for exercise, does not in any way detract from her

15  credibility as to her overall disability."  *Vertigan v. Halter*, 260 F.3d 1044, 1050

16  (9th Cir. 2001).  A claimant does not need to be "utterly incapacitated."  *Fair v.*

17  *Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  Here, plaintiff's activities were not

18  inconsistent with her alleged physical or mental symptoms.  Plaintiff's primary

19  alleged physical limitation was the ability to lift or carry no more than twenty

20  pound occasionally and ten pounds frequently.  None of the activities cited by the

21  ALJ were inconsistent with this limitation.  Similarly, none of the activities of

22  daily living were inconsistent with plaintiff's alleged moderate mental limitation in

23  her ability to maintain concentration and attention.

24  In sum, the ALJ cited one reason for discounting plaintiff's credibility that –

25  in a vacuum – was clear and convincing, but the other reasons cited were not clear

26  and convincing.  In light of the numerous unconvincing reasons cited, plaintiff's

27  conservative treatment was not, by itself, sufficient reason for the ALJ to have

28

discounted plaintiff's credibility, particularly given plaintiff's testified lack of financial means to seek further treatment. As such, the ALJ erred in discounting plaintiff's credibility for the reasons he stated.

## V.

## REMAND IS APPROPRIATE

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). It is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, remand is required because the subsequent award of benefits is new and material evidence that is inconsistent with the instant application. Remand is also required because the ALJ failed to properly consider the opinions of plaintiff's

treating and examining physicians, failed to properly assess plaintiff's credibility, and thereby failed to properly determine plaintiff's RFC.  On remand, the ALJ shall consider the new evidence and further develop the record as needed, reconsider the physicians' opinions and either credit the opinions or provide specific and legitimate reasons supported by substantial evidence for rejecting them, and reconsider plaintiff's credibility and either accept her testimony or provide clear and convincing reasons for rejecting it.  The ALJ shall then proceed through steps two, three, four, and, if necessary, five to determine what work, if any, plaintiff was capable of performing.

## VI.

## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: December 29, 2016

_____
SHERI PYM
United States Magistrate Judge

30